# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MYLAN PHARMACEUTICALS INC., )<br><br>and )<br><br>MATRIX LABORATORIES LTD., )<br><br>Plaintiffs, )<br><br>v. )<br><br>UNITED STATES FOOD )<br>AND DRUG ADMINISTRATION, )<br><br>Defendant. ) | Case No. 1:11-cv-00566-RWR-<br>(REDACTIONS UNDER SEAL) |

### DECLARATION OF ANTHONY MAURO PURSUANT TO
### 28 U.S.C. § 1746 IN SUPPORT OF PLAINTIFFS'
### MOTION FOR A PRELIMINARY INJUNCTION AND
### REQUEST FOR AN EXPEDITED HEARING

1.      I, Anthony Mauro, hereby submit this Declaration in support of Plaintiffs'

Motion for a Preliminary Injunction and Request for an Expedited Hearing in this matter.

I have personal knowledge of the facts set forth herein, or believe them to be true based

on my experience in the pharmaceutical industry or upon information provided to me by

others.  If asked to do so I could testify truthfully about the matters contained herein.

2.      I am the President of Mylan Pharmaceuticals Inc. ("Mylan").  I have held

this position since January 2010.  I joined Mylan in 1996, and prior to my current role as

President, I was Chief Operating Officer of the Canadian affiliate of Mylan, as well as

Vice President of North American Strategic Development for Mylan North America.
Prior to holding those positions, I served as Vice President of Sales for Mylan. Based on
my current position and experience, I have knowledge concerning the generic drug
industry in general.

3.      Matrix Laboratories Ltd. ("Matrix"), a manufacturer of generic drug
products, is currently awaiting the approval by the U.S. Food and Drug Administration
("FDA") of its Abbreviated New Drug Application ("ANDA") No. 91-226 for generic
atorvastatin calcium ("atorvastatin") tablets, 10mg, 20mg, 40mg, and 80mg.

4.      Mylan, based in Morgantown, West Virginia, is the U.S. agent for Matrix
in connection with the atorvastatin ANDA. Mylan is a market leader in researching,
developing, manufacturing, marketing and distributing generic pharmaceutical products
in a variety of dosage forms. Following approval of the Matrix atorvastatin ANDA,
Mylan will be the commercial distributor of Matrix's atorvastatin ANDA products in the
United States. ███████████████████████████████████████
███████████████

5.      As of the date of this Declaration, and to the best of my knowledge,
information and belief, Mylan does not know of any open deficiencies with the Matrix
ANDA, which should put Matrix's ANDA in an approvable position as early as ███████
███ absent any period of exclusivity blocking FDA's approval.

6.      However, FDA has not informed the public, including Mylan, whether a
manufacturer that was believed to be the first to file an atorvastatin ANDA (specifically

Ranbaxy Laboratories Ltd.) will be entitled to 180-day marketing exclusivity, which exclusivity period would delay FDA's final approval of the Matrix atorvastatin ANDA and Mylan's commercial launch of that product.

7.      As discussed herein, absent an immediate decision by FDA concerning 180-day exclusivity, Mylan will suffer irreparable harm.

### *Uncertainty of Launch Date*

8.      I understand that a question has been raised as to whether first filer Ranbaxy is eligible for 180-day exclusivity with respect to its atorvastatin ANDA, and that a question has been raised as to whether Ranbaxy's atorvastatin ANDA is subject to FDA's Application Integrity Policy ("AIP").

9.      On information and belief, Ranbaxy will be eligible to launch its generic atorvastatin product in late November 2011, assuming its atorvastatin ANDA is approved by then.  If Ranbaxy maintains its 180-day marketing exclusivity, an approval in late November 2011 or later would preclude other generic competitors like Mylan from entering the market until 180 days thereafter, or until late May 2012.  It is my further understanding that if FDA were to decide that no party has 180-day exclusivity for this product, that decision could permit other ANDA sponsors for atorvastatin, including Matrix, to obtain FDA approval of their respective ANDAs for generic atorvastatin, and therefore commercially launch the generics, as early as June 28, 2011 – almost a year earlier than anticipated if Ranbaxy maintained 180-day marketing exclusivity.

3

10.     Despite repeated requests by Mylan, FDA has failed to decide, or to inform the public, whether the Ranbaxy ANDA is subject to the AIP and, if so whether that fact will eliminate any exclusivity period.  FDA's decision on this issue may clear the path for approval and commercial launch of other generic atorvastatin ANDAs as early as June 28, 2011.  FDA's failure to make a decision here creates uncertainty about when Mylan and other generic companies will be able to commercially launch their atorvastatin products in the U.S. market.

11.     I am aware of the considerable disadvantages and irreparable harm that a company will suffer by missing out on an opportunity to be the first (or at least among the first generics) on the market with respect to any generic drug.  Such losses include, but are not limited to, significant lost profits and sales across all product lines; an accompanying decrease in overall market share; decreased access to important customers; loss of customer goodwill; and diminished reputation – all of which prevent a company from effectively competing in the ultra-competitive generic drug industry.  This is especially true in the case of a product of the magnitude of generic LIPITOR®, which is one of the most widely prescribed cholesterol-lowering medications in the world.  Absent a decision from FDA whether any drug marketer has 180-day exclusivity, Mylan will suffer these harms.

### *Market for Generic Atorvastatin – Benefits of Earliest Possible Commercial Launch and Market Entry*

12.     The savings to consumers and third-party payors upon the availability of generic alternatives to LIPITOR® will be significant, and will increase with each additional generic alternative to enter the market.  If FDA fails to make a decision that might allow the earliest possible commercial launch of a generic LIPITOR® product while the branded product remains on the market with no available competitive alternative, then those savings are lost and can never be recouped.

13.     IMS Health ("IMS") is a widely-recognized company that supplies the pharmaceutical industry with sales data, and is recognized and relied on by the industry as providing reasonably accurate estimates of the size of the markets for prescription drugs.

14.     Drug manufacturers routinely rely on IMS data to prepare launch quantity and market share projections.  I understand that, according to IMS data, LIPITOR® (the brand-name atorvastatin product) is one of the most widely prescribed drugs in the United States, with over 2.2 billion tablets prescribed per year in the four approved strengths of the drug product (10mg, 20mg, 40mg, and 80mg of active ingredient per tablet).  A launch of a generic version of LIPITOR® is anticipated to be unprecedented in terms of the value of the potential generic market.

15.     According to those same data, annual savings for all United States payors for generic versions of LIPITOR® are estimated to reach between $3.9 billion and $6.7

billion per year, which equals a savings of between $10.9 million and $18.3 million per

day. Federal payors alone, such as Medicare, Medicaid and the Department of Veterans

Affairs, could save between $1.3 billion and $2.3 billion in the first year after the launch

of generic versions of LIPITOR®, or $3.8 million per day. These totals are based on an

assumption that the average price of a generic drug is approximately 26% of the brand

price.

16. If generic versions of LIPITOR® obtain a market share of more than 95% in

the first year after launch, as happens with the average generic drug, the public stands to

save billions more. Savings could be as high as $6.7 billion annually (or $18.3 million

per day) for all Americans, or as high as $2.3 billion annually (or $6.4 million per day)

for the government as a payor. According to IMS data, when the generic version of

ZOCOR® (simvastatin) entered the market in 2006, generic companies captured 97% of

the market within one year, saving the federal government and American public billions

of dollars compared to the branded product. Approximately a year after launch, IMS data

show the average generic price for simvastatin was about 5 percent of the price of the

brand drug.

### *Potential Revenue from Early Launch of a Generic Version of Atorvastatin*

17. Assuming that FDA decided that Ranbaxy is not entitled to 180-day

marketing exclusivity, then, at the outset of generic competition, there could likely be at

least two generic competitors, Mylan and Watson Pharmaceuticals, Inc. ("Watson"),

which I understand is the "authorized generic"[1] distributor of Pfizer's branded

LIPITOR®.

18.    Based on analyst reports and other publicly available information, it is

believed that other generic atorvastatin competitors may be able to obtain approval of

(and subsequently launch) their products in the near term (and possibly as early as June

28, 2011) if FDA were to decide that Ranbaxy is not entitled to 180-day marketing

exclusivity. This would benefit the public because increased competition lowers prices.

19.    Publicly available documents reveal that there are at least seven generic

drug manufacturers that have submitted ANDAs for one or more dosage strengths of

atorvastatin calcium tablets. Based on regulatory provisions staying approval for several

of those applications, it is believed that as many as four generic companies similarly may

be able to obtain approval (and therefore have the ability to launch) on or shortly after

June 28, 2011.

20.    If FDA had determined or disclosed at the end of January 2011, or earlier,

that the Ranbaxy ANDA was not eligible for 180-day marketing exclusivity, Mylan

would have anticipated a generic market share of up to 40 percent. If FDA had made an

earlier decision that there would be no 180-day marketing exclusivity, then Mylan

believes that Matrix could have ramped up production so that sufficient quantities of

---

[1]    Generics that are sold pursuant to a license from the patent holder (here, Pfizer) are
"authorized generics." These authorized generics are not affected by the 180-day
marketing exclusivity period because they fall under the patent holder's original
drug application.

atorvastatin, in an amount estimated at up to 40 percent of the projected market, would have been available at launch and for the 12 months thereafter. However, FDA failed to make a decision, causing Mylan to lose out on the opportunity to realize the massive additional revenue from these additional sales. Assuming there is no 180-day exclusivity, it is likely that Mylan will never recoup the anticipated lost market share or lost sales that early market entrants typically gain, and which Mylan could have gained had FDA made a decision earlier ███████████████████████████ ███████████ Matrix is currently in the process of manufacturing sufficient product to meet a projected 20 percent of the generic market. ██████████████ ████████████████████████████████████████████████ ██████████████████████████████ Mylan reasonably anticipates that, with a conservatively-estimated 20 percent market share, it could generate ██████████████ in revenues from sales of generic atorvastatin in the first year after launch. It is projected that Mylan would be able to obtain, and retain, a generic market share of about 20 percent during that time frame, which would generate sales equivalent to approximately ████████ of Mylan's projected U.S. revenues during a given year.

### *Public Interest*

21.     The public interest will only further benefit from FDA deciding the matter of 180-day exclusivity for generic atorvastatin immediately, particularly if FDA

8

determines that the first filer is not entitled to exclusivity and consequently that other generic applicants are approvable as early as June 28, 2011. Generic competition means lower prices for consumers. By having more choices of generic atorvastatin, consumers will undoubtedly experience lower prices as a result of the competition.

22.   Also, the profits Mylan earns from the sale of its generic atorvastatin products at least indirectly benefit consumers by allowing Mylan to develop and introduce new generic drugs into the U.S. market.

I declare under penalty of perjury that the foregoing is true and correct.

03/24/11
_____
Date

_____
Anthony Mauro
President
Mylan Pharmaceuticals Inc.